*In re* JUAN I. LACÉN, JUEZ DE PAZ GENERAL, querellado.

*Número:* O-74-514          *Resuelto:* 14 de enero de 1976

*Myriam Naveira de Rodón, Procuradora General, Ruth Tentori* y *Roberto Armstrong, Jr., Procuradores Generales Auxiliares,* abogados de El Pueblo, *José A. Andreu García* y *Manuel E. Andreu García,* abogados del recurrido.

PER CURIAM: En cumplimiento con nuestra Resolución de 20 de septiembre de 1974, motivada por una determinación de causa probable de este Tribunal, la Procurador General de Puerto Rico formuló querella contra el Juez de Paz General, Juan I. Lacén, consistente de los siguientes cargos:

### *"PRIMER CARGO*

El día 14 de marzo de 1974, en Loíza, Puerto Rico, el querellado, actuando como Juez de Paz, luego de recibir la licencia matrimonial expedida celebró el matrimonio de Elba Luz López Trinidad con Enrique Ortiz Figueroa, allí y entonces declarándolos marido y mujer. Dicho magistrado dejó de enviar la licencia matrimonial y certificado de matrimonio correspondientes al Registro Demográfico dentro de los términos y en la forma prescrita por la ley, en violación de los artículos 24 y 42 de la Ley Núm. 24 de 22 de abril de 1931, 24 L.P.R.A. secs. 1163 y 1301.

### *SEGUNDO CARGO*

Que el día 17 de junio de 1974, el referido magistrado celebró en Loíza, Puerto Rico el matrimonio de Ricardo Plaza Andino con Evarista Pizarro Carrasquillo a sabiendas de que Evarista Pizarro Carrasquillo era menor de 14 años de edad, en violación de lo dispuesto en los Artículos 69, 70 y 77 del Código Civil de Puerto Rico, 31 L.P.R.A. secs. 231, 232 y 245. A la fecha de la celebración de dicho matrimonio el contrayente Ricardo Plaza Andino estaba acusado de violación de la menor, en el caso sobre violación VP-74-1658, en el Tribunal de Distrito de San Juan.

### *TERCER CARGO*

Que el 12 de junio de 1974, en San Juan, Puerto Rico, el referido magistrado dejó sin efecto la fianza impuesta a Lydia Miranda Rodríguez acusada de ataque para cometer asesinato, dejándola en libertad sin fianza bajo la custodia de su abogado,

en violación de lo dispuesto en la Regla 6.1 de Procedimiento Criminal.

### CUARTO CARGO

Que el día 22 de mayo de 1974, el referido magistrado, actuando en los casos criminales números 74-393, 74-394 y 74-395, calificó como fraude tres denuncias juradas contra José Luis Ayala Rivera, imputándole hechos constitutivos del delito de falsificación."

Con posterioridad a la presentación de la precedente querella se formularon nuevos cargos contra el querellado por lo que se decretó su suspensión provisional de empleo y sueldo hasta que se completara la ventilación y procesamiento de los cargos en su contra.

Los cargos adicionales fueron formulados mediante querella de la Procurador General de Puerto Rico que reza como sigue:

### "QUINTO CARGO

El querellado ordenó el archivo de veinticuatro denuncias radicadas en el Tribunal de Distrito, Sala de Carolina, sobre violaciones a la Ley de Tránsito, 9 L.P.R.A. sin tener la facultad en ley por falta de jurisdicción.

| Fechas de Archivo | Denuncias Archivadas |
|---|---|
| 26 de noviembre de 1974 | 2 |
| 9 de octubre de 1974 | 2 |
| 21 de octubre de 1974 | 5 |
| 10 de octubre de 1974 | 1 |
| 23 de agosto de 1974 | 1 |
| 16 de octubre de 1974 | 1 |
| 18 de octubre de 1974 | 1 |
| 17 de octubre de 1974 | 1 |
| 29 de octubre de 1974 | 1 |
| 12 de noviembre de 1974 | 1 |
| 13 de noviembre de 1974 | 1 |
| 14 de noviembre de 1974 | 2 |
| 5 de noviembre de 1974 | 1 |
| 30 de octubre de 1974 | 1 |

| Fechas de Archivo | Denuncias Archivadas |
|---|---|
| 8 de octubre de 1974 | 1 |
| 24 de octubre de 1974 | 1 |
| 11 de octubre de 1974 | 1 |
| Total ...................... | 24 |

### SEXTO CARGO

El 7 de noviembre de 1974, el querellado emitió resolución y orden en el caso de *Marco Antonio de Jesús Tapia* v. *Cesario Rivera Meléndez et seq.*, sobre Derecho de Paso, aparentando ostentar el título de Juez del Tribunal de Distrito, Sala de Carolina y sin tener facultad o jurisdicción para actuar en esa forma."

Designamos al Hon. Cándido Ceballos Comisionado Especial para entender en la vista de ambas querellas, la cual fue celebrada luego del querellado haber sometido su contestación a los cargos formuládosle. El querellado estuvo representado por su abogado José A. Andreu García y la Procurador General por la Procurador Auxiliar Ruth Tentori. Las partes acordaron someter el caso por el expediente de la investigación de los cargos, incluyendo las declaraciones juradas prestadas por los testigos, la evidencia documental contenida en el expediente y demás documentos pertinentes, y por las 24 denuncias a que se refiere el cargo número cinco.

El Comisionado Especial rindió el informe que al pie de la letra lee como sigue:

### "INFORME DEL COMISIONADO ESPECIAL

Por resolución de fecha 30 de abril de 1975 del Hon. Tribunal Supremo de Puerto Rico fuimos designado Comisionado Especial para entender en la vista de la querella radicada ante el Hon. Tribunal, por la Oficina de la Hon. Procuradora General de Puerto Rico contra el Hon. Juez de Paz General, Sr. Juan I. Lacén.

El 8 de julio de 1975 celebramos una conferencia preliminar en el Salón de Sesiones del Hon. Tribunal Supremo con el pro-

pósito de simplificar los procedimientos. El querellado tuvo la oportunidad de examinar la evidencia en poder de la Oficina de la Procuradora General para sostener los cargos e informó, por conducto de su representación legal Lcdo. Manuel E. Andréu, que había presentado su renuncia como Juez de Paz General al Hon. Gobernador de Puerto Rico, solicitando la suspensión de la vista hasta conocer la decisión del señor Gobernador.

Siendo esa la situación y no habiendo objeción accedimos a lo solicitado señalando la vista de los cargos para el 18 de septiembre de 1975 a las 9:00 A.M.

El Hon. Gobernador de Puerto Rico se negó a aceptar la renuncia por entender que habiéndose iniciado los procedimientos se deberían continuar los mismos hasta su adjudicación final.

El 18 de septiembre del corriente año se procedió a la celebración de la vista en sus méritos de los seis cargos formulados contra el querellado. La Oficina de la Procuradora General estuvo representada por la Lcda. Ruth Tentori y el querellado por el Lcdo. José A. Andreu García. En dicha vista las partes informaron al Oficial Examinador que luego de haber examinado el expediente de la investigación de los cargos, incluyendo las declaraciones juradas prestadas por los testigos, la evidencia documental contenida en el mismo y demás documentos pertinentes habían acordado someter los cargos por dicho expediente y la evidencia indicada, además de las 24 denuncias a que se refiere el cargo número cinco. Las denuncias se marcaron como un solo exhibit. (Exhibit I de la Oficina de la Procuradora General.)

Luego de habernos cerciorado sobre la voluntariedad de la estipulación mediante preguntas al querellado y estar convencidos que tanto éste personalmente como su representación legal conocían el contenido del expediente de la investigación y la evidencia allí contenida; de que el querellado se había asesorado debidamente con su abogado y estaba consciente de lo que significaba lo convenido, aceptamos la estipulación de las partes.

En consideración a lo anteriormente expuesto hacemos las siguientes:

## DETERMINACIONES DE HECHOS

*PRIMER CARGO:*

'El día 14 de marzo de 1974, en Loíza, Puerto Rico, el querellado, actuando como Juez de Paz, luego de recibir la licencia matrimonial expedida celebró el matrimonio de Elba Luz López

Trinidad con Enrique Ortiz Figueroa, allí y entonces declarándolos marido y mujer. Dicho magistrado dejó de enviar la licencia matrimonial y certificado de matrimonio correspondientes al Registro Demográfico dentro de los términos y en la forma prescrita por la ley, en violación de los arts. 24 y 42 de la Ley Núm. 24 del 22 de abril de 1931. 24 L.P.R.A. secs. 1163 y 1301.'

El querellado negó este cargo. Alegó afirmativamente que no había celebrado dicho matrimonio.

(1) El día 14 de marzo de 1974 los jóvenes Elba López Trinidad y Enrique Ortiz Figueroa, quienes hacía tiempo llevaban relaciones amorosas, se dirigieron a la residencia del Hon. Juez de Paz General Juan I. Lacén, acompañados de los testigos Hilda Cruz y Alfredo Meléndez, con el propósito de que dicho magistrado celebrara el matrimonio de los referidos jóvenes.

(2) El novio Enrique Ortiz Figueroa y el Sr. Juez Lacén eran amigos y habían sido compañeros de trabajo en la Policía de Puerto Rico, habiéndose ofrecido el último a casarlo cuando el primero se decidiera a contraer matrimonio.

(3) En los momentos en que Elba Luz y Enrique llegaban a la residencia del magistrado Sr. Lacén, en Loíza, éste salía de su casa. Al decirles los referidos jóvenes que deseaban contraer matrimonio y entregarle la licencia matrimonial les indicó a éstos y a los testigos que firmaran en el sitio correspondiente, lo que hicieron, apoyándose sobre el bonete del automóvil del novio, procediendo el magistrado Sr. Lacén a celebrar el matrimonio en la acera, manifestándoles 'ya son marido y mujer.'

(4) Aparentemente, la rapidez de la celebración del matrimonio y su sencillez produjeron en la mente de la novia ciertas dudas en cuanto a si estaban o no casados. Eso motivó que el contrayente le preguntara al magistrado si eso era todo lo que había que hacer. Este le contestó que él sabía hacer su trabajo; que estaban casados y podían irse de luna de miel. Antes de celebrar el matrimonio les había dicho que no había necesidad de explicarles el procedimiento porque ya ellos lo conocían debido a que cada uno de ellos se había casado anteriormente.

(5) Posteriormente los contrayentes volvieron a contraer matrimonio ante un sacerdote católico en la Iglesia San José Obrero, en Río Piedras, Puerto Rico.

(6) Durante la vida matrimonial surgieron disputas y discrepancias entre Elba Luz López Trinidad y su esposo Enrique

Ortiz Figueroa. En una ocasión él le dijo que no estaban casados civilmente lo que acrecentó en ella su duda en cuanto a la validez de ese matrimonio. Surgieron agrias discusiones entre ellos y finalmente se separaron.

(7) Ambos cónyuges fueron varias veces donde el querellado para que les consiguiera un certificado de matrimonio o alguna otra prueba que les convenciera de que estaban legalmente casados, contestándole éste con evasivas. Finalmente le dijo a Enrique Ortiz Figueroa que lo que sucedía era que faltaba llenar información adicional en los documentos en relación con el matrimonio y divorcio previo de cada uno de los cónyuges. Instruyó a Enrique Ortiz Figueroa que fuera al Registro Demográfico de Río Grande a buscar un documento que éste y su esposa tenían que llenar, firmar y traer al querellado en relación con la información adicional, para proceder con la inscripción del matrimonio en el Registro Demográfico. Enrique Ortiz Figueroa así lo hizo pero debido a frecuentes peleas y discusiones con su esposa y otras veces a posposiciones por razones personales nunca se cumplió con este requisito, separándose los cónyuges luego de haber ella abandonado el hogar llevándose parte del mobiliario.

(8) El matrimonio celebrado por el Juez querellado en la acera de la calle, frente a su residencia en el pueblo de Loíza, Puerto Rico, nunca fue inscrito en el Registro Demográfico correspondiente porque no se cumplió por el querellado con las disposiciones de las secciones 1163 y 1301 del Título 24 de LPRA al dejar de enviar los documentos correspondientes al Registro Demográfico en la forma que requiere la ley. Los registradores demográficos de los pueblos de Loíza, Canóvanas y Carolina, a solicitud de la esposa Elba López Trinidad, expidieron certificaciones negativas de la inscripción del matrimonio.

*SEGUNDO CARGO:*

'Que el día 17 de junio de 1974, el referido magistrado celebró en Loíza, Puerto Rico, el matrimonio de Ricardo Plaza Andino con Evarista Pizarro Carrasquillo a sabiendas de que Evarista Pizarro Carrasquillo era menor de 14 años de edad, en violación de lo dispuesto en los Artículos 69, 70 y 77 del Código Civil de Puerto Rico, 31 LPRA, secs. 231, 232 y 245. A la fecha de la celebración de dicho matrimonio el contrayente Ricardo Plaza Andino estaba acusado de violación de la menor, en el

caso sobre violación VP-74-1658, en el Tribunal de Distrito de San Juan.'

El querellado contestó aceptando este cargo. Alegó afirmativamente 'que fue inducido a creer que la menor Evarista Pizarro Carrasquillo había cumplido los 14 años de edad a la fecha en que ofició el matrimonio contraído entre ésta y Ricardo Plaza Andino el 17 de junio de 1974, por razón de que la madre de dicha menor le presentó una declaración jurada en la cual hacía constar que dicha menor había cumplido los 14 años de edad.'

(1) El 17 de junio de 1974 el querellado celebró el matrimonio de la menor Evarista Pizarro Carrasquillo con Ricardo Plaza Andino, quienes eran novios y habían tenido relaciones sexuales.

(2) Días antes de la celebración de ese matrimonio, el 7 de junio de 1974, el querellado había determinado causa probable contra el contrayente Ricardo Plaza Andino por el delito de violación cometido en relación con dicha menor Evarista Pizarro Carrasquillo, fijándole al acusado una fianza de $80,000.00. De los hechos alegados en esa denuncia que tuvo ante sí el querellado surge expresamente que en la fecha en que se dice se cometió el delito, la contrayente Evarista Pizarro Carrasquillo tenía solamente 13 años de edad.

(3) La señora madre de la contrayente, doña Evarista Carrasquillo Pinet, acompañó a su hija y al acusado Ricardo Plaza Andino a la oficina del querellado para que los casara y mostró a éste, antes de celebrar el matrimonio, el certificado de nacimiento de la menor, el cual indica que dicha contrayente nació el 19 de septiembre de 1960, en Canóvanas, Puerto Rico.

(4) El 31 de julio de 1974 el querellado envió con el padre del acusado Ricardo Plaza Andino al Hon. Juez Juan V. Sánchez del Tribunal de Distrito, Sala de San Juan, una nota que dice: 'Que la mamá de la joven no tiene interés ninguno en el caso.'

*TERCER CARGO:*

'Que el 12 de junio de 1974, en San Juan, Puerto Rico, el referido magistrado dejó sin efecto la fianza impuesta a Lydia Miranda Rodríguez acusada de ataque para cometer asesinato, dejándola en libertad sin fianza bajo la custodia de su abogado, en violación de lo dispuesto en la Regla 6.1 de Procedimiento Criminal.'

El querellado contestó el cargo aceptándolo. Alegó como atenuante 'que la persona perjudicada por el delito de ataque para cometer asesinato supuestamente cometido por Lydia Miranda Rodríguez, era el marido de ésta, quien suplicó del querellado que tomara éste la acción que se imputa en dicho cargo por razón de que la acusada tenía una hija en estado de lactancia y era dicha acusada la única persona que podía lactar y hacerse cargo del cuido de la referida infante.' Se alega también que la causa que estaba pendiente contra la acusada fue archivada por otro magistrado, previa vista preliminar, a solicitud del perjudicado.

(1) El día 12 de junio de 1974 se juró denuncia ante el querellado contra Lydia Miranda Rodríguez, por ataque para cometer asesinato. Se alegó que ésta acometió y agredió con un gato de un automóvil a Tulio Rosado Fred, con deliberación y propósito firme de matarlo, ocasionándole tres heridas en la cabeza, quedando recluido en un hospital de Fajardo.

(2) En esa misma fecha el querellado determinó causa probable contra la acusada y le fijó una fianza de $5,000.00.

(3) Posteriormente, en igual fecha el querellado expidió bajo su firma un mandamiento de excarcelación dirigido al Alcaide de la Cárcel de Distrito de San Juan, ordenándole poner en libertad a la acusada (de no haber estado detenida por otra causa) decretando que ésta quedara bajo la custodia del abogado M. A. del Valle y dejando sin efecto la fianza de $5,000.00 que previamente le había fijado.

## CUARTO CARGO:

'Que el día 22 de mayo de 1974, el referido magistrado, actuando en los casos criminales números 74-393, 74-394 y 74-395, calificó como fraude tres denuncias juradas contra José Luis Ayala Rivera, imputándole hechos constitutivos del delito de falsificación.'

En su contestación el querellado aceptó las alegaciones contenidas en este cargo. Alegó afirmativamente que a pesar de haber calificado erróneamente los delitos como fraude, determinó causa probable por esos delitos y le impuso al acusado fianza por $91,500.00 para responder por los mismos.

(1) El 22 de mayo de 1974 el querellado intervino en tres denuncias radicadas contra José Luis Ayala Rivera. En la primera de dichas denuncias se alega que el 4 de abril de 1974 el acusado: 'ilegal, voluntaria, maliciosamente, a sabiendas y con la

intención de defraudar como lo hizo a la institución bancaria Crédito y Ahorro Ponceño, Sucursal de Río Grande, expidió como válido el cheque #519 por la cantidad de $298.00 a nombre de Angel L. Ayala contra el Banco Crédito y Ahorro Ponceño, Sucursal de Río Grande, falsificando la firma de Roberto Maldonado Cruz y pasó el mismo como genuino y verdadero, cobrando el importe a sabiendas que dicha firma era falsa y falsificada por haber sido puesta por el mismo acusado.'

(2) Las otras dos denuncias alegan hechos esenciales similares a la anterior [sic] imputando cada una el delito de falsificación de un cheque girado contra el Banco Crédito y Ahorro Ponceño, por $103.00 y $73.00 respectivamente, expresándose que se falsificó la firma de Antonio Fernández Escobar en el primero y la de Pablo Suárez en el segundo.

(3) En cada una de esas denuncias el querellado determinó causa probable por el delito de fraude y fijó fianza de $30,000.00, $5,000.00 y $30,000.00 respectivamente, con fecha 22 de mayo de 1974.

*QUINTO CARGO:*

'El querellado ordenó el archivo de veinticuatro denuncias radicadas en el Tribunal de Distrito, Sala de Carolina, sobre violaciones a la Ley de Tránsito, 9 LPRA sin tener la facultad en ley por falta de jurisdicción.'

Este cargo fue negado por el querellado alegando falta de información suficiente para formar una opinión respecto a la veracidad y corrección de lo alegado.

Para sustanciar este cargo la Hon. Procuradora General ofreció y fue admitido en evidencia, sin objeción del querellado, el Exhibit I consistente de 24 denuncias radicadas en el Tribunal de Distrito, Sala de Carolina, contra varias personas, por violaciones a la Ley de Tránsito de Puerto Rico, archivadas por el querellado sin tener facultad para ello, en distintas fechas comprendidas entre el 23 de octubre de 1974 y el 26 de noviembre del mismo año.

En conversación que sostuviera el Hon. Juez Guillermo Méndez Muñoz con el querellado sobre el archivo indebido de dichas denuncias, le indicó el querellado que lo había hecho porque creía de buena fe que tenía jurisdicción para hacerlo, prometiendo no seguir con dicha práctica errónea.

*SEXTO CARGO:*

'El 7 de noviembre de 1974, el querellado, emitió resolución y orden en el caso de Marco Antonio de Jesús Tapia v. Cesario Rivera Mélendez et seq., sobre Derecho de Pago, aparentando ostentar el título de Juez del Tribunal de Distrito, Sala de Carolina y sin tener facultad o jurisdicción para actuar en esa forma.'

El querellado negó este cargo por falta de información para formar opinión respecto a su veracidad y corrección. Alegó en contrario que de ser correctos los hechos alegados en dicho cargo, los mismos se cometieron inadvertidamente y por una errónea interpretación respecto a las facultades de su cargo.

(1) En el asunto o querella de Antonio de Jesús Tapia v. Cesario Rivera Meléndez y Gregorio Rivera Meléndez, sobre Derecho de Paso, el querellado ostentando el título y cargo de Juez de Distrito emitió una resolución concediéndoles a dichos Rivera Meléndez noventa días para desalojar un solar y advirtiéndoles que de no desocupar el inmueble dentro de ese término se dictaría orden de desahucio en su contra. Dicha resolución fue dictada el 7 de noviembre de 1974 y aparece firmada así: 'Juan I. Lacén, Juez de Distrito.'

(2) En igual fecha, en el mismo asunto dictó otra orden sobre mensura del referido terreno firmando como Juez de Distrito del Tribunal de Distrito, Sala de Carolina.

Respetuosamente sometido conjuntamente con el expediente de investigación y Exhibit I de la Oficina de la Procuradora General.

En San Juan, Puerto Rico, a 23 de octubre de 1975.

(*Fdo.*) Cándido Ceballos
      Comisionado Especial."

Hemos examinado detenidamente las determinaciones de hecho contenidas en el precedente Informe del Comisionado Especial a la luz de la prueba presentada y concluimos a base de nuestro ponderado examen que el querellado observó una conducta altamente impropia y reprensible al actuar en abierto desafío y en contravención a la ley establecida lo cual lesiona la dignidad del cargo de juez y destruye la fe en él

depositada en su delicada función de impartir justicia con decoro, integridad, buen sentido y respeto a la ley. *En vista de ello se hace necesario su separación del cargo de Juez de Paz General efectivo el día 2 de mayo de 1975 fecha en que fuera separado provisionalmente mediante nuestra resolución de esa misma fecha.*